We're going to move to our last hearing of the morning. This is Appeal 23-3086, United States v. Devontae Martin. Mr. Hillis, the podium is yours again. I'm going to try not to be as loud or speak as quickly as that last lawyer, but let me begin by saying this. The standard of review. The government says on appeal that the standard of review is plain error, because my client did not object. We think that is incorrect, that the standard of review, while it may have been an open question, it's been clarified much since the time of Wood and Wiltshire, and Wood and Wiltshire instruct that review is de novo, because individuals do not have to take exception to the district court's explanation of sentencing that is consistent, of course, Wood and Wiltshire, consistent with federal rule of criminal procedure 51A. So unless the court has questions about the standard of review, I'd like to move on to the substantive issues in the case. I have some questions for Mr. Temkin about the contrary view, but keep going. The district court on the substantive matter first committed error by cabining its sentencing discretion to a departure provision. This court has said in different opinions that the departure regime has been toppled by Booker, and it has. But the government took a rigid approach, suggesting a life sentence was possible only for negligent and reckless acts per United States Sentencing Guideline 2A.1.1 Application Note 2B. That's a departure provision. That does say exactly what the government told the district court. But when a district court cabins its sentencing discretion by a departure provision that is no longer limiting its authority post-Booker, we have an error that is similar to the error in Castaneda, which establishes that a district court errs by acceding to an incorrect legal premise advanced by the government. The difficulty that I have with that, Mr. Hillis, is when you look at, forget how it was presented to the district court judge, when you look at that sentencing transcript, which I know you've read many times over, and we come to the point where the district court talks about how it considered the 2A.1.1, that explanation does not seem to include any legal error to me at all. In other words, Judge Simon recognized that he absolutely had the authority to come below the rank, whether you want to call it, don't get tied up in the nomenclature, right? Whether it's a variance, a departure, an adjustment, a modification. But he, the district judge chose not to exercise that discretion, as he put it, given the active involvement of Mr. Martin in the underlying offense, the possession of the AK-47, etc. So that doesn't seem to me to be infected by any legal error. It seems exactly right. It seems different to me by my reading, Judge. How is it different? That's what I'm interested in. Right. It's the chronology. It's when the judge says, how is it that I can give a sentence less than life, and the defendant responds by seizing on the departure provision and saying, when it's negligence, when it's recklessness, you can, when it's intentional acts, like it's here, Judge, you can't. The judge seemed to be steered right then into a departure analysis. But they were talking earlier, were they not, about the example that the commission gives is of the bank teller that has a heart attack during the bank robbery, right? That's correct. And I think the district court here said this is just a, it's a night and day different circumstance. Right. And so the, that hardly seems to be swinging open the doors past the departure provision. They then limit their analysis, their argument, and then the analysis to what the departure provision is. It seemed to me, I thought that was a fair reading of the transcript. Chronologically, it's correct. I don't see the district court breaking away from saying anything to the government like, that's just the departure provision. I have greater authority post-Booker, and I understand that the departure provision's an example, but I can exercise more discretion than what the departure provision would allow. He doesn't do anything like that to signal that he's not acceding to the view of the U.S. attorney at that point, Judge, so that's why I think that it is akin to the Castaneda type of problem. Judges, in my experience, are not shrinking violets and black robes. They are assertive. If I say something wrong, I know your honors will tell me or ask me why I said something. Here the district court said nothing, and that silence signals assent to me, I think, based on a fair reading of what the transcript was. Okay, so let me make sure I got this, because I don't know that I took that refined point away from your brief, but is what you're saying, I'm not sure about this, is what you're saying when it came to 3553A, that the district court did not recognize the discretion it had there? Is that the point? I am, Judge. I'm saying, though, that it's kind of a two-fold problem, is that when the district judge is asking for guidance from the prosecutors about under what circumstances can he give a lower sentence than life, which is the guideline, and they steer him over the departure provision and talk about the contours of it, and saying how this circumstance is different, then the judge, when he goes finally to the 3553A analysis, he is already locked in and agreed, apparently, with the government about why the dissimilarities between this conduct and the departure provision seem to make my client a person who should not be held accountable for his actions. So the 3553 colloquy did precede the guidelines point. I beg your pardon. I have it in reverse. So that makes it worse, in my opinion, when you start out with the premise that I have greater authority, and then the prosecutor would direct you to something that limits your authority to a departure provision. That would seem to suggest the district court is now adopting the view that he has less authority than he really does under 3553A, Judge. That, to me, seemed to be the drift of what was occurring. Okay. I got it. Okay. And for the other reason we believe that there was error in this case, it is that the government relied then on incorrect information, and the prosecutor in the case said that my client fired an AK-47. Discharging around during an offense would seem to make you more culpable. Killing somebody as opposed to being the person who just is in concert with the person who makes the fatal shot makes you more culpable. The government agrees that the prosecutor misstated that about the discharge from the AK-47. That's government's brief, page 16. And the district court, again, is listening. This is not uncommon in my experience, that prosecutors know a lot. They're highly trained. They are responsible folks who try to give correct information. Even when they make a mistake, we have got authority, Supreme Court authority, that says in front of a jury they have a duty to correct it. When they make a misstatement about what your limitation is on your ability to give a lower sentence or what the facts are in the case that the defendant discharged the AK-47, judges are listening a lot to prosecutors and their view of the law and the facts in the case. And when the judge here, again, doesn't say that didn't happen, when the prosecutor doesn't correct him or herself and say we made a misstatement about that. But there too, when you get to that part of the sentence, I mean, I've looked at this carefully. I mean, you're guys doing a lot of time here. As much as you can. Yeah, life sentence. When you look at that part of the sentence, though, Mr. Hillis, what the district court said is there are some shots that rain out from this AK-47 as a result of the tussle you're in with the victim. So it's a more, you might say it's a more careful statement, but it's definitely not saying while you're in this tussle, you know, you fired shots. It just says shots rain out. Yeah. I would like it to be more certain, given what that stake here, life sentence versus not. And when the prosecutor has advanced a faulty premise that my client fired that AK-47 and the judge says this, that still leads us to wonder, was he clarifying it? Did he get it right? Did he know that my client didn't fire the AK-47, which, again, in my opinion, if you fire around in an offense, you're more culpable of your conduct. What's right around it, and I know you've told me, helpfully, I don't like that phrase right around it. I don't like it when you start talking about context. But what's right above it and what's right below it, literally on the same page, is the observation of how, as the district court put it, how shockingly violent the overall encounter was. It was. Of course. Right. So there's no question about that. So doesn't that suggest, that's what's driving this. Okay. That's fair enough, but as part of it, wouldn't we want to know, were you the one who discharged the round, who was more culpable, the person who administers the fatal blow versus not? Your conduct, while not negligent. There's a lot of academic discussion about the felony murder doctrine and how culpable somebody really should be as a person who signed up for a burglary and then somebody else commits a murder during the process, right? So those are things that are important to be explored, and I don't think that they were especially well understood here. That's my concern. Thank you, Mr. Hillis. Mr. Temkin, we'll move to you now for an argument from the appellee. May it please the court. Good morning, your honors. Eli Temkin for the United States. This court should affirm Mr. Martin's sentence. I'll be happy to address the standard of review, but ultimately, the court should affirm under any standard. The district court here did not misapprehend its sentencing authority and the role of the  The court did what it was supposed to do in sentencing Mr. Martin. It calculated the guidelines range. It then conducted a discretionary sentencing analysis under Section 3553A. In that analysis, the court considered Mr. Martin's culpability, and in doing that, it brought up and addressed the application note, the departure provision at issue here. On that point, the district court recognized and the government also recognized that this issue was at the district court's discretion. The government acknowledged that on page 21 of the appendix. The government attorney said this was in the court's discretion, and the court expressly recognized that twice on page 29 of the appendix. First, addressing the potential, the application note in terms of a potential departure or variance, and obviously a variance would be clearly discretionary, and then even more clearly after that, the court said, given all the factors that I have addressed, I'm exercising my discretion not to depart or vary in this case. The district court is well within bounds to consider a departure provision, but it's not bound by a departure provision. The formal departure analysis is obsolete, and the district court understood that. The court's Section 3553A analysis was extensive. It takes up roughly eight pages of the transcript. The court was considering all these factors, Mr. Martin's history, defense conduct, and his culpability. On the merits, the concern, or the circumstance raised in the application note is a far cry from the facts here. The application note contemplates a defendant who goes to commit a bank robbery, hands the teller a note, just hands the teller a note, and the teller has a heart attack. That's a far cry from this case where Mr. Martin planned an armed robbery and kidnapping to get drugs. He and his accomplice carried it out, both with guns. Mr. Martin with an assault rifle. He chased the owner of the car wash, fought him in the street, and that led to the murder of the victim here. As to Mr. Martin's argument about inaccurate information, he has the burden to show both inaccurate information and reliance. He highlights two pieces of this, but the district court just did not adopt the assertions of the government that he challenges. On the first piece of this, the rifle and the shots from the rifle during Mr. Martin's fight with the victim in the street, first just to clear that up, this was not a question of who fired the fatal shots. It's undisputed that it was Mr. Martin's accomplice that ran up as Mr. Martin was fighting with the victim in the street, and as the victim was getting the upper hand, he was landing punches, he was standing up. The victim was landing punches. Mr. Martin yells to his accomplice, I'm over here. His accomplice runs over and fires the fatal shots. The question is about shots that were fired from Mr. Martin's assault rifle as he was fighting with the victim. Tom, how about the standard of review? Sure. The standard of review here is plain error because Mr. Martin did not present the arguments that he now raises to the district court. So, first as to the argument that he presents now, asserting that the district court misaddressed Does that mean that, in your view, that there needed to be a contemporaneous objection, an objection at sentencing to the district court's articulation of its understanding of 2A1.1? There needed to be an objection if Mr. Martin thought the district court misunderstood its discretion under the guidelines. It's asking a lot of a defense counsel at that moment, isn't it? It's a reasonable request and it's what the rules of procedure require. The district court brought up the issue of this departure provision and engaged in a colloquy with the government that spans, I believe, five or six pages of the transcript. And at the end of that, the court asks Mr. Martin's counsel, do you have anything to say on the topic? And counsel declines to address it. The issue was out there and everyone in the room, it appears, was on the same page that it was discretionary. Here's why I'm asking this question. In all candor, Mr. Temkin, I'm frustrated with the U.S. attorney community. We have written three opinions, trying to be as deliberate as we possibly can. The only thing we haven't done is done it in a unanimous on-bank. In Wood, Wilcher, and Martin, cases Mr. Hillis points to saying that there does not need to be a contemporaneous objection at sentencing to preserve a legal error. But yet we see appeal, and I know you probably feel like I'm picking on you because you're standing at the podium. But over and over and over again, we have seen appeals where the government is basically saying we do not like Wood and you should review for plain error. Wood is the law of the circuit, like it or not. And I don't see how this is anything other than de novo. Now to be sure, your merits position is well taken and it's well articulated. But this kind of combat against the Wood line of cases is not being well received. Absolutely, Your Honor. Again, the government believes that it should prevail under any standard. But as to the standard of review... Take a look at that line of cases for me. If I may address it, Your Honor. This case is not Wood or Wilcher or Martin. Those cases address the circumstance where the purported error comes up for the first time in the court's ruling. That's the circumstance contemplated by Rule 51A. The defendant does not need to take exception to preserve that type of argument for appellate review. Absolutely. In Wood, for example, the potential error, the purported error was the district court for the first time in the explanation of the sentence. For the first time brought up an unrelated defendant in an unrelated case as a comparator for the sentences. Yeah, what I worry about is that you're asking for a rule that when the district court judge said there are some shots that ring out from this AK-47 as a result of the tussle, et cetera, right in the course of the district court working through its reasoning, that the government, contrary to Wood, is asking for a contemporaneous objection. Yes, Your Honor. That is emphatically contrary to Wood. In that sense, it matters which of the specific arguments we're talking about. As to the sentencing discretion, that came up earlier. As to the purported inaccurate information, if the district court had actually adopted that assertion at that point, Mr. Martin would have a much stronger case. Arguably, the defense counsel would have been in a position to stake out a position after the government brought it up, but at minimum, if the district court had made a finding at that point, it would be a much stronger argument than, for example, the issue of discretion to depart under the application now. But Wiltshire and Wood both framed the question as whether the defendant had, I'm going to quote from Wood, notice or opportunity to advance a pre-ruled position. Wiltshire, at page 870, frames the question as whether a party had the chance to formulate a position beforehand to the extent the party does, as was the case here at least before that. Just don't make the mistake of reading these opinions like statutes or regulations and parsing our words that carefully. We've said no contemporaneous objection. You get the point. Well taken, Your Honor. All right. Ultimately, under any standard, the district court understood its sentencing authority and discretion and did not rely on any inaccurate information. Unless the court has further questions, the government asks the court to affirm. Thank you, Mr. Temkin. Mr. Hillis, we'll give you two minutes on rebuttal.  Any ambiguity in this record, and I think there is at least that, if there's not more than to say is our advantage, is that the district court did rely on incorrect information, did misperceive the extent of its discretion by cabining its authority with reference to the departure provision. All of that could have been done away with pretty easily. First of all, if the prosecutors don't say that the defendant fired the shots, that would have been better. If the prosecutor were to highlight that this is but an example, then the judge isn't then making a record that flows from something that looks incorrect as if he's adopted an incorrect view of anything. We think that for Castaneda, while it dealt with a legal premise, it would be equally applicable to factual misstatements by a prosecutor. And the judge shouldn't remain silent to leave us to wonder perhaps on the appeal whether or not the judge did correctly get down the facts. Do you think, though, Mr. Hillis, Mr. Temkin's making the point, he articulated the offense conduct and what role your client played and didn't play. Do you have any reservation with his articulation of it? No, except it... And do you think that misaligns, though, with the record here? I think that's a problem. As a bullet point somewhere, he's absolutely correct. But right in the context where the judge is asking for the U.S. Attorney's Office to tell him the right way to go on something and how to consider an issue, they begin with the departure provision, that's putting the judge in the wrong lane. So I do worry about that, and I worry in particular when it's a life sentence, that we should be very certain that all of the facts and the law are handled correctly before we order somebody to be warehoused for the remaining years. We all come with an expiration date. My client in particular is a 20-some-year-old guy who's going to be in prison for the rest of his life as things stand. So we think it's very important to always get things right, but perhaps in these circumstances more than any. Thank you, Mr. Hillis. Thank you, Mr. Temkin. The case will be taken under advisement. That will complete our hearings for today. Thank you.